IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Lavata Maria Levine, ) | |
| ) | C/A No. 2:05-2906-18 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER and OPINION** |
| Walterboro City Police Department; and ) | |
| Press Printing International Inc., d/b/a ) | |
| Walterboro Newspapers Inc., d/b/a The ) | |
| Press and Standard, Defendants ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I.     BACKGROUND

On January 26, 2002 defendant Walterboro City Police Department ("police") arrested plaintiff Lavata Maria Levine in the parking lot of a Walterboro, South Carolina movie rental store. Plaintiff was fifteen at the time. Three days later[1], defendant Press Printing International, Inc., d/b/a Walterboro Newspapers, Inc. d/b/a The [Walterboro] Press and Standard ("newspaper") published a photograph of plaintiff in a police car with "an accompanying caption falsely indicating that plaintiff was charged with public disorderly conduct, assault, battery and malicious damage." (Compl. ¶ 14.) Plaintiff contends newspaper labeled her a "malicious teen." (Pl.'s mem. in opp., doc. 18, at 8.) Plaintiff initiated this suit in state court on August 12, 2005, alleging police's detention was illegal.[2] Plaintiff further alleges newspaper's publication invaded her privacy and

---

[1] Newspaper's briefs state the publication was on June 29, 2002, not in January.

[2] As the court noted at the hearing, it must have been a slow news day on January 29, 2002, and a slow litigation day on August 12, 2005.

violated S.C. Code Ann. § 20-7-8520. At the hearing on newspaper's motion to dismiss, plaintiff further alleged the complaint includes a claim for intentional infliction of emotional distress.

This action was removed to this court on October 11, 2005. Newspaper filed a motion to dismiss on March 22, 2006. Plaintiff did not respond, so this court granted the motion on May 17, 2006. The court vacated that order on June 21, 2006, and permitted plaintiff to file a memorandum in opposition. Newspaper's motion to dismiss is again before the court.

## II.    DISCUSSION

### a.    Section 20-7-820

At the hearing on this motion, plaintiff conceded that § 20-7-8520 does not restrict a newspaper's activities. As such, dismissal of this claim is proper.

### b.    Invasion of Privacy

Plaintiff concedes that the arrest was in a public parking lot in full public view. South Carolina "does not recognize a right of privacy in connection with that which is inherently a public matter." Meetze v. Associated Press, 230 S.C. 330, 95 S.E.2d 606, 609 (1956).

> A person may by his acts . . . lose to some extent the right of privacy that otherwise would be his. There are times when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place, he emerges from his seclusion and the publication of his connections with such occurrence is not an invasion of privacy.

Plaintiff was arrested in the public parking lot of a movie rental business, a location she describes as a "business parking lot." Plaintiff's right to privacy does not extend to

matters that occur on public property in broad daylight.  Dismissal of this claim is proper.

### c.    Intentional Infliction of Emotional Distress

Plaintiff belatedly contends her complaint includes an allegation for intentional infliction of emotional distress.  Even if plaintiff's complaint properly alleges this cause of action (a dubious assumption), as against a media defendant this claim is amid the alien corn.

> The tort of outrage was designed not as a replacement for the existing tort actions.  Rather, it was conceived as a remedy for tortuous conduct where no remedy previously existed. Here, an action for defamation, which is the usual remedy to be employed against one who has published falsehoods, is available to [plaintiff].

Todd v. South Carolina Farm Bureau Mut. Ins. Co., 283 S.C. 155, 173, 321 S.E.2d 602, 613 (Ct. App. 1984) (rev'd on other grounds, 287 S.C. 190, 336 S.E.2d 472).  Intentional infliction of emotional distress is a claim of last resort.  In this context, plaintiff could have pursued a defamation claim against newspaper.  Since that alternative remedy was available, Todd suggests that a claim for intentional infliction of emotional distress cannot lie.

Further, it is doubtful plaintiff can meet the elements of the tort.  Intentional infliction of emotional distress punishes conduct "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community." Todd, 283 S.C. at 166, 336 S.E.2d at 609.  Whether the evidence suggests defendant's conduct may "reasonably constitute outrageous conduct" is a question of law for the court. Id. at 168, 336 S.E.2d at 609.  Only if sufficient evidence exists may a jury determine if the conduct was in fact outrageous behavior. Id.

To survive the initial inquiry, plaintiff must demonstrate that defendant's behavior can reasonably been seen as beyond the pale. This substantial obstacle is even more apparent when applied to a newspaper; practical considerations warn against permitting such claims for every misquote. The court shares plaintiff's concern for damage to her reputation,[3] but the tort of intentional infliction of emotional distress requires an unusually high degree of damning evidence - all the more exacting in the First Amendment context. As such, the court cannot conclude that defendant's conduct as described in the complaint amounts to extreme, outrageous, atrocious and utterly intolerable behavior.

Finally, plaintiff draws sustenance from the South Carolina Supreme Court's consideration of the claim against a newspaper in Upchurch v. N.Y. Times Co., 314 S.C. 531, 431 S.E.2d 558 (1993). However, factual distinctions render Upchurch a disappointing Barmecide feast.[4] Upchurch considered a family's intentional infliction of emotional distress claim against the Spartanburg Herald based on printed accounts of a family member's death. The supreme court held the third party family members could not maintain the action since they were not the target of defendant's conduct.[5] In contrast, plaintiff brings the claim in her own right. Therefore, Upchurch addresses an

---

[3] "The purest treasure mortal times afford is a spotless reputation." William Shakespeare, Richard II, act.1, sc.1.

[4] Elizabeth Webber and Mike Feinsilber, Merriam-Webster's Dictionary of Allusions 43 (1999).

[5] The court noted that the family members could have brought the claim if defendant had committed a violent act against the decedent in the family members' presence. Upchurch, 314 S.C. at 538, 431 S.E.2d at 558. This caveat does not apply to the present action.

aspect of the claim which is not relevant in the instant action. The court did not have to reach whether plaintiffs could in fact bring the claim, as was the case Todd.

### III.     CONCLUSION

For the reasons stated above, it is therefore **ORDERED** that newspaper's motion to dismiss plaintiff's claims with prejudice is **GRANTED**.

**AND IT IS SO ORDERED.**

*[signature]*
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 3, 2006**
**Charleston, South Carolina**